IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| HAIWEN CHEN,<br><br>Plaintiff,<br><br>v.<br><br>EDUCATIONAL TESTING SERVICE, Inc.,<br><br>Defendant. | Civil Action No. 22-580-CFC |

## MEMORANDUM

Plaintiff Haiwen Chen has sued Defendant Educational Testing Service, Inc. (ETS) for employment discrimination. Pending before me is ETS's Motion to Dismiss Due to Lack of Personal Jurisdiction or, Alternatively, to Transfer Venue and for Failure to State a Claim for Relief. D.I. 5. I agree that this Court lacks personal jurisdiction over ETS and that the interests of justice would be better served by transferring this action to the District of New Jersey. I need not and do not decide whether Chen's Complaint states a claim upon which relief can be granted.

I.  **BACKGROUND**

Chen is 67 years old. D.I. 1 ¶ 1. He lives in Bear, Delaware. D.I. 1 ¶ 1. ETS is a non-profit corporation incorporated in New York, D.I. 7-1 at 2, with its principal place of business in Princeton, New Jersey, D.I. 7 ¶ 3; D.I. 1 ¶ 2. ETS also is registered to do business in Delaware. *See* D.I. 7 ¶ 2. According to an ETS declaration, ETS does not own, operate, or lease any Delaware offices, facilities, or real property; and it does not have any Delaware bank accounts. D.I. 7 ¶ 4.

Chen began working for ETS in 2002. D.I. 1 ¶ 7. When ETS hired Chen, Chen worked in ETS's Princeton office. But in 2010, Chen "request[ed] approval for telecommuter status." D.I. 6-1 at 2. According to an email that Chen wrote, Chen chose to move to Delaware because Chen's wife was involved in a car accident while she was commuting from Pennsylvania to Wilmington. D.I. 6-1 at 15. ETS agreed to Chen's request, and ETS and Chen executed an Alternate Work Site Agreement (AWA). Under the AWA, Chen could work from home on Mondays, Thursdays, and Fridays. On Tuesdays and Wednesdays, however, Chen still had to report to ETS's Princeton office. D.I. 6-1 at 2–3. ETS also provided Chen with a laptop that Chen agreed to use solely for work, and ETS reimbursed Chen for relevant telephone and internet expenses. D.I. 6-1 at 3–4. Chen also agreed that he was "responsible for any injuries and/or damages occurring on [Chen's] premises," that "[w]orker's compensation claims will be handled by ETS

2

according to the procedure used for on-site employee claims," and that "ETS assumes no liability for injuries occurring to third parties . . . that may occur at the alternate work site." Furthermore, "[Chen agreed] to indemnify and hold ETS harmless for injury to third parties that may occur at the alternate work location." D.I. 6-1 at 2. Nothing in the AWA states that Chen's remote work was conditioned on his residence in Delaware.

In 2016, Chen and ETS executed an "Alternate Worksite Agreement Change" (AWAC). Under the AWAC, Chen became a full-time telecommuter. D.I. 6-1 at 7–9. Chen continued to use ETS equipment, and he continued to be responsible for any injuries that might occur at his home office. D.I. 6-1 at 8. The AWAC also specifies that "[a]ny zoning issues and tax consequences that must be considered are the employee's responsibility" and "[e]mployees are encouraged to make certain that their tax location is accurate by reviewing their pay voucher as soon as possible after an alternate work relationship has commenced." D.I. 6-1 at 9. Like the AWA, the AWAC did not state that Chen's remote work was conditioned on Chen's Delaware residence. To the contrary, the AWAC specified that "[e]mployees are required to change their work and home locations within PeopleSoft concurrent with any changes made to either location." D.I. 6-1 at 9; *see also* D.I. 6-1 at 10 ("If you moved or plan to move from your current home address at any time, **you must update your home address location** information in

3

PeopleSoft and notify SWS . . . . The address change is critical to making certain that your payroll taxation is accurate.") (emphasis in the original).

According to the Complaint, ETS "pa[id] [Chen's] income taxes and unemployment insurance tax to Delaware." D.I. 1 ¶ 9.

In 2018, ETS informed Chen that he would have to start working in ETS's Princeton office three days per week. D.I. 6-1 at 16–17. Chen responded by defending his performance and explaining that he could not work at ETS three days per week. Chen stated that he was primarily concerned that making the 90-mile commute to Princeton three days per week would harm his health. D.I. 6-1 at 14–16. Chen and ETS exchanged numerous emails. Chen also hired an attorney. D.I. 6-1 at 19–24; D.I. 1 ¶¶ 26, 35. After continued disagreements, Chen filed an age discrimination complaint pursuant to ETS's Employment Polices and Standards. D.I. 1 ¶ 20. Ultimately, on November 5, 2018, ETS fired Chen. D.I. 6-1 at 38. Chen now brings this lawsuit, alleging that ETS's conduct violated the Age Discrimination in Employment Act (ADEA). D.I. 1 ¶¶ 42–63, 69–86. Chen also raises state law claims. D.I. 1 ¶¶ 64–86.[1]

---

[1] On February 3, 2022, the EEOC returned a determination that it would not proceed further with Chen's ADEA complaint. D.I. 1 ¶ 6; D.I. 1-1 at 2.

4

## II. LEGAL STANDARDS

A party may move to dismiss a case when the court lacks personal jurisdiction over the party. Fed. R. Civ. P. 12(b)(2). "Once challenged, the plaintiff bears the burden of establishing personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007) (citation omitted). When, as here, "the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have [his] allegations taken as true and all factual disputes drawn in [his] favor." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). To establish personal jurisdiction over an out-of-state defendant, the plaintiff ordinarily must satisfy both a statutory and a constitutional requirement. For the statutory requirement, the court analyzes the long-arm statute of the state where the court is located. Fed. R. Civ. P. 4(e). For the constitutional requirement, the court assesses whether exercising jurisdiction satisfies due process. *See Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 451 (3d Cir. 2003).

Neither of ETS's briefs refer to Delaware's long-arm statute; ETS raises only due process arguments. Thus, ETS has waived any argument that the Court lacks personal jurisdiction under Delaware's long-arm statute. *See Laborers' Int'l*

5

*Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief.").

A federal court's ability to exercise personal jurisdiction over a defendant is limited by the Due Process Clause of the Fifth Amendment. *See Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 103–04 (1987). There are two kinds of personal jurisdiction: general and specific. General jurisdiction allows a court "to hear any and all claims against" a defendant. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (citation omitted). Specific jurisdiction allows a court to hear only claims "deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks and citation omitted). Chen "admits that he cannot show general jurisdiction." D.I. 10 at 10. Therefore, Chen must prove that there is specific jurisdiction.

"The inquiry as to whether specific jurisdiction exists has three parts. First, the defendant must have purposefully directed [its] activities at the forum. Second, the litigation must arise out of or relate to at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice." *O'Connor*, 496 F.3d at 317 (alterations in original; internal quotation marks and citations omitted).

"The first requirement, minimum contacts, has been defined as some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Toys "R" Us*, 318 F.3d at 452 (internal quotation marks and citations omitted). The initial burden is on the plaintiff to "establish[] with reasonable particularity sufficient contacts between the defendant and the forum state" that give rise to the suit. *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (citation omitted). Once the plaintiff has met this burden, the defendant must "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable" and thus offend traditional notions of fair play and substantial justice. *Miller Yacht*, 384 F.3d at 97 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

## III. ANALYSIS

In specific jurisdiction cases, the purposeful availment requirement exists to provide defendants with "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign" so that they "will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King*, 471 U.S. at 472, 475 (alterations, internal quotation marks, and citations omitted). Thus, for there to be purposeful availment, the defendant's connection with the forum state must be sufficiently substantial that the defendant

"should reasonably anticipate being haled into court there." *Id.* at 474 (citations omitted). Courts have found purposeful availment and specific jurisdiction when a defendant "deliberately has engaged in significant activities within a State" or has "created continuing obligations between [itself] and residents of the forum." *Id.* at 475–76 (internal quotation marks and citations omitted). In contrast, the mere "unilateral activity of those who claim some relationship with a nonresident defendant" does not establish purposeful availment. *Id.* at 474 (citation omitted). Also, "the state of a plaintiff's residence does not on its own create jurisdiction over [a] nonresident defendant[]." *Kennedy v. Help at Home, LLC*, 731 Fed. App'x 105, 108 (3d Cir. 2018) (quoting *Marten v. Godwin*, 499 F.3d 290, 298 (3d Cir. 2007)) (alterations in original).

In this case, Chen argues that the following suit-related actions justify the exercise of specific jurisdiction over ETS: (1) ETS approved Chen's telecommuter request; (2) ETS supplied Chen with office equipment and covered Chen's relevant telephone and internet expenses; and (3) Chen's claims arise out of Chen's employment relationship with ETS—a relationship that caused ETS to pay Chen's wages, withhold Chen's Delaware taxes, and ultimately allow Chen to collect Delaware unemployment. *See* D.I. 10 at 12; D.I. 1 ¶ 9. But none of these

actions—considered individually or collectively—support exercising specific jurisdiction over ETS to adjudicate Chen's ADEA and state law claims.[2]

First, Chen worked as a Delaware telecommuter because he asked to, not because ETS told him to. ETS hired Chen to work in ETS's Princeton office. Chen worked there for eight years. He stopped working in Princeton only because ETS agreed to Chen's request to telecommute. And Chen only lived and worked as a Delaware telecommuter because Chen chose to move to Delaware.

Second, none of Chen's work as a Delaware telecommuter was directed at the State of Delaware. Chen alleges in the Complaint that he was a member of ETS's Psychometrics & Data Analysis Group. D.I. 1 ¶ 8. But Chen does not allege in his Complaint, answering brief, or attached declaration that he performed any work directed at Delaware individuals, businesses, or other entities; or even that he communicated with other Delaware-based ETS employees.[3] Rather, it

---

[2] Usually, courts must "assess specific jurisdiction on a claim-by-claim basis. However, it may not be necessary to do so for certain factually overlapping claims." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 n.3 (3d Cir. 2007) (internal quotation marks and citation omitted). Here, Chen's ADEA and state law claims all factually overlap because they all center around Chen's teleworking performance and communications with ETS. I therefore need not analyze Chen's claims separately.

[3] Three of the cases Chen cites in opposition to ETS's motion are inapposite because the plaintiffs in those cases interacted with individuals, businesses, or entities located in the forum state. *See Cossart v. United Excel Corp.*, 804 F.3d 13, 17, 22 (1st Cir. 2015) (finding specific jurisdiction in Massachusetts where Plaintiff, a Massachusetts telecommuter of a Kansas-based employer, "had

9

appears that Chen communicated only with ETS employees who lived and worked outside of Delaware. *See generally* D.I. 1.

Third, as district courts from this Circuit have uniformly held, paying a remote employee and withholding the employee's state and local taxes are not enough to subject the employer to the specific jurisdiction of the remote worker's state of residence. *See, e.g., Carlson v. Colo. Firearms, Ammunition & Accessories, LLC*, 2022 WL 11398472, at *3–4 (E.D. Pa. Oct. 19, 2022) (finding no specific jurisdiction in Pennsylvania over Plaintiff, a Pennsylvania telecommuter of a Colorado-based employer, even though the employee answered emails from Pennsylvania, was paid in Pennsylvania, and the employer deducted

---

numerous meetings and made cold calls in an effort to solicit business from various hospitals in Massachusetts"); *Winner v. Tryko Partners, LLC*, 333 F. Supp. 3d 250, 264 (W.D.N.Y. 2018) (finding specific jurisdiction in New York where Plaintiff, a New York telecommuter of a New Jersey-based employer, "provide[d] marketing services in New York," the employer "communicated with [the telecommuter] regularly in New York, and enlisted her representation at various business meetings in New York"); *Stuart v. Churn LLC*, 2019 WL 2342354, at *5 (M.D.N.C. June 3, 2019) (finding specific jurisdiction in North Carolina where Plaintiff, a North Carolina telecommuter of a New York-based employer, "was working to expand [Defendant's] business to North Carolina and [was] meeting with potential distributors [t]here"). The fourth case cited by Chen, *Hall v. Rag-O-Rama, LLC*, 359 F. Supp. 3d 499 (E.D. Ky. 2019), is also inapposite. The defendant in *Hall* was an Ohio-based employer that "aggressively sought out [the employee] for high-level employment" with the knowledge that the employee lived in Kentucky and would work from Kentucky. *Id.* at 510. Here, in contrast, ETS hired Chen with the understanding that Chen would work in ETS's Princeton office. Chen only worked from Delaware because he sought out telecommuter status.

10

the appropriate Pennsylvania taxes from the employee's paychecks); *Kearney v. Good Start Genetics, Inc.*, 2017 WL 6206168, at *1, 5 (E.D. Pa. Dec. 8, 2017) (finding no specific jurisdiction in Pennsylvania over Plaintiff, a Pennsylvania telecommuter of a Massachusetts-based employer, even though the employee "primarily conducted work from his home in Glen Mills, Pennsylvania," and paid Pennsylvania wage taxes); *Grainer v. Smallboard, Inc.*, 2017 WL 736718, at *2 (E.D. Pa. Feb. 24, 2017) ("The fact that Smallboard.com made payments to Plaintiff's bank account in Pennsylvania, without more, does not establish specific jurisdiction.").

In sum, ETS hired Chen to work as a full-time employee in ETS's Princeton campus. After Chen requested telecommuter status, ETS acquiesced. ETS did not direct Chen to work in Delaware, and Chen did not engage with any Delaware entities or individuals. All ETS did was approve Chen's telecommuter request, lend him a computer, and follow proper payroll practices. Those accommodations were not activities purposefully directed at Delaware and it would be unfair to hale ETS into a Delaware court to adjudicate Chen's employment-based claims. Accordingly, I find that the Court lacks personal jurisdiction over ETS to adjudicate Chen's claims.

I will not, however, dismiss Chen's claims, as I find that the interests of justice would be better served by transferring the case to the District of New

11

Jersey. *See* 28 U.S.C. § 1631 ("Whenever . . . th[e] court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed . . . .") *see also Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 218 n.9 (3d Cir. 2002) (noting that the district court in that case "had authority, if it found that it lacked in *personam jurisdiction*, to transfer plaintiffs' first action" to another district where personal jurisdiction and venue were proper). ETS does not contest that personal jurisdiction is proper in the District of New Jersey; on the contrary, it has separately moved to transfer the action to the District of New Jersey, *see* D.I. 5. Moreover, ETS is subject to general jurisdiction in New Jersey because its principal place of business is in New Jersey. *See* D.I. 7 ¶ 3; *see also Daimler*, 571 U.S. at 137 ("With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction.") (alterations, internal quotation marks, and citations omitted).

## IV. CONCLUSION

For the foregoing reasons, I find that the Court lacks personal jurisdiction over ETS and that it is in the interests of justice to transfer the case to the District of New Jersey.

The Court will enter an order consistent with this Memorandum.

March 1, 2023

_____
CHIEF JUDGE

13